IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

LATHERL PARKER,                          )
                                         )
            Plaintiff,                   )
                                         )
                                         )        CIV-11-197-D
v.                                       )
                                         )
DR. TROUTT, et al.,                      )
                                         )
            Defendants.                  )

## REPORT  AND  RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this action

pursuant to 42 U.S.C. § 1983 alleging violations of his federal constitutional rights. The

matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).

The Defendants have moved to dismiss the cause of action pursuant to Fed.R.Civ.P.

12(b)(6) or, alternatively, for summary judgment pursuant to Fed.R.Civ.P. 56.  Defendants

have also caused the filing of a special report consistent with Martinez v. Aaron, 570 F.2d

317 (10th Cir.1978).  Although notified of his obligations in responding to the Motion under

Fed.R.Civ.P. 12(b)(6) and 56, to this date Plaintiff has not filed a responsive pleading or

sought an extension of time to do so, and the time for filing a response has expired.  For the

following reasons, it is recommended that Defendants' Motion to Dismiss be granted as to Plaintiff's claims against the Oklahoma Department of Corrections ("ODOC") and all Defendants sued in their official capacities and that Defendants' Motion for Summary Judgment be granted as to all other claims brought by Plaintiff.

## I.    Background Facts/Plaintiff's Claims

Plaintiff is an inmate in the custody of the ODOC.  Plaintiff is currently incarcerated at James Crabtree Correctional Center ("JCCC") in Helena, Oklahoma.

On February 25, 2009, Plaintiff was a passenger on a prison transport bus.  Plaintiff injured himself while exiting the bus.  In Count I, Plaintiff alleges a violation of his Eighth Amendment rights contending Defendants John Does 1 and 2 subjected him to an excessive risk of falling by their conduct when Plaintiff "deboarded" the bus and fell.  Plaintiff alleges these Defendants created unsafe conditions that caused him to fall as he exited the bus.

In Count II, Plaintiff alleges a violation of his Eighth Amendment rights contending Defendants Jane Doe Nurse, Katryna Frech, Health and Medical Administrator, and Dr. Jeff Troutt acted with deliberate indifference to Plaintiff's serious medical needs.  Plaintiff alleges Defendants delayed and denied proper medical care at JCCC for injuries he received as a result of the fall.

In Count III, Plaintiff alleges a violation of his due process rights.  Plaintiff claims Defendants Felicia Harris, JCCC Administrative Assistant I, and Charlene Bredel, Business

Manager III,[1] retaliated against him for filing a prior civil rights lawsuit.[2] Plaintiff alleges

Defendants refused to process his disbursement request for funds to pay his partial filing fee.

Plaintiff further alleges Defendant Harris ordered another inmate to stop providing legal

assistance to Plaintiff.  As a result, Plaintiff claims he was not able to pursue administrative

remedies as to the claims raised in the prior action.  Finally, Plaintiff claims in Count III that

Defendants Frech and Troutt retaliated against Plaintiff for filing the prior civil rights action

by depriving him of pain medications for a one-week period.

As relief, Plaintiff seeks compensatory and punitive damages.  He also seeks

injunctive relief.

## II.   **Analysis**

### A.   **Eleventh Amendment Immunity – Plaintiff's Claims Against the ODOC and Defendants Sued in their Official Capacities**

Defendants seek dismissal of Plaintiff's claims against the ODOC and the claims

brought against the individual Defendants in their official capacities on grounds of Eleventh

Amendment immunity. Under the Eleventh Amendment, a state is immune from suit in

federal court unless the state unmistakably waives its immunity or Congress explicitly

abrogates the state's immunity by statute.  See Welch v. Texas Dept. of Highways and Public

---

[1]In the Complaint, Plaintiff initially identified this Defendant as having the last name "Brill." However, at the time Plaintiff requested issuance of summons, he corrected the last name to Bredel. See Pro Se Litigant's Request for Issuance of Summons [Doc. #13]. The Court, therefore, construes Plaintiff's claims against Defendant Brill as properly brought against Defendant Bredel.

[2]On December 16, 2010, Plaintiff filed a civil rights action in this judicial district, Parker v. Frech, et al., Case No. CIV-10-1361-D.  Plaintiff voluntarily dismissed the action on January 28, 2011.

Transp., 483 U.S. 468, 472-72 (1987). The State of Oklahoma has not waived its Eleventh Amendment immunity. See Ramirez v. Oklahoma Dept. of Mental Health, 41 F.3d 584, 589 (10th Cir.1994); see also Okla. Stat. tit. 51 §§ 152.1 and 153 (adopting doctrine of sovereign immunity for State of Oklahoma, its political subdivisions and its employees acting within the scope of their employment). Furthermore, Congress did not abrogate Oklahoma's sovereign immunity through the enactment of section 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979).

Plaintiff's claims against the ODOC, an agency of the State of Oklahoma, and the individual Defendants sued in their official capacity are barred by the Eleventh Amendment. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 70 (1989); see also Eastwood v. Department of Corrections of State of Okl., 846 F.2d 627, 631-32 (10th Cir.1988) (holding "the DOC is an arm of the state and should be entitled to absolute [Eleventh Amendment] immunity"); Shaw v. Colorado Dept. of Corrections, No. 01-1525, 2002 WL 183309 (10th Cir. Feb. 6, 2002) (unpublished op.) ("Shaw's section 1983 suit against the Colorado Department of Corrections is barred by the Eleventh Amendment.") (citing Griess v. State of Colorado, 841 F.2d 1042, 1045 (10th Cir.1988)). The ODOC is also immune from any other form of relief sought by Plaintiff. See ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1187 (10th Cir.1998) (any form of relief against state agency, even solely prospective injunctive relief, is barred). Therefore, Plaintiff's claims against ODOC should be dismissed based on Eleventh Amendment immunity, and Plaintiff's official capacity claims for monetary damages against the individual Defendants should also be dismissed on the same

basis.

**B.      Exhaustion of Administrative Remedies**

Defendants move for summary judgment on grounds Plaintiff has failed to exhaust administrative remedies.  The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust his administrative remedies prior to filing a lawsuit in federal court challenging prison conditions.  42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").   The United States Supreme Court has held that the exhaustion requirement is mandatory and "unexhausted claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199, 211 (2007).

The Supreme Court has equated the proper exhaustion requirement to the "numerous unforgiving deadlines and other procedural requirements" prisoners are forced to comply with when litigating *pro se* in federal courts.  Woodford v. Ngo, 548 U.S. 81, 103 (2006).  Thus, pursuant to § 1997e(a), a prisoner must *properly* exhaust administrative remedies.  Id., 548 U.S. at 90.   Proper exhaustion requires the inmate to follow the prison's procedural requirements defining the steps necessary for exhaustion.  Jones, 549 U.S. at 218. ("In Woodford, we held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . rules that are defined not by the PLRA, but by the prison grievance process itself.") (quoting Woodford, 548 U.S. at 88). The inmate must not only begin the grievance

5

process, but must follow the process to its completion to satisfy the exhaustion requirement. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). "[T]he doctrine of substantial compliance does not apply." Id.; see also Thomas v. Parker, 609 F.3d 1114, 1118 (10th Cir. 2010).

Where an inmate's grievance is rejected by prison officials on procedural grounds, the inmate's claim is unexhausted and barred from federal court review. Kikumura v. Osagie, 461 F.3d 1269, 1290 (10th Cir. 2006), *overruled on other grounds by* Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008); Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004) ("A prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted."). Thus, for example, if an inmate fails to follow the time periods set by the prison's procedural requirements, the claim is unexhausted and procedurally barred. Patel v. Fleming, 415 F.3d 1105, 1109-1110 (10th Cir. 2005).

But a prisoner is only required to exhaust *available* administrative remedies. Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010). Thus, a district court is "'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials' before dismissing a claim for failure to exhaust." Id. (quoting Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)). A court will excuse a prisoner's failure to exhaust on grounds the remedy is unavailable "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy." Id.

Finally, § 1997e(a)'s exhaustion requirement is an affirmative defense. Jones, 549 U.S. at 216. Thus, the burden is on Defendants to assert a failure to exhaust in their

dispositive motion.  The failure to exhaust defense is generally viewed as an allegation that the complaint fails to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), see id., but as set forth below, the Court analyzes the issue here pursuant to Fed.R.Civ.P. 56.

### 1.    Standard of Review – Summary Judgment

Defendants have relied upon materials outside the pleadings in support of their Motion. The Court has considered these materials to determine whether Plaintiff exhausted his administrative remedies before filing this action.  Therefore, Defendants' Motion is treated as a motion for summary judgment on the issue of exhaustion.  See Fed. R. Civ. P. 12(d); 56.

 Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. Burke v. Utah Transit Authority and Local, *382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted).  Although Defendants, as the moving parties, bear the initial burden of production, once they meet this burden, Plaintiff "may not rest on [his] pleadings, but must bring forward specific facts showing a genuine issue for trial."  Kannady v. City of Kiowa, 590 F.3d 1161, 1169 (10th Cir. 2010) (citation and internal quotations omitted).

### 2.    The ODOC Offender Grievance Process

The ODOC Offender Grievance Process, OP-090124, governs Plaintiff's exhaustion

of administrative remedies.[3]  The Grievance Process involves four steps.  First, the inmate must attempt to resolve the matter informally by speaking to an appropriate staff member. See id., ¶ IV(A).  If the matter is not resolved informally, the inmate must submit a written Request to Staff (RTS).  Id., ¶ IV(B).  If the matter is still not resolved, the inmate must resort to the formal submission of a grievance by filing a Grievance Report Form (grievance). Id., ¶ V(A).   The fourth step is the appeal stage which requires the inmate to appeal a grievance denial to the Administrative Review Authority or Chief Medical Officer.  Id., ¶ VII(B).  The appeal stage is the final stage and, once completed, constitutes satisfaction of the Grievance Process.  Id., ¶ VII(D)(1).  As discussed more fully below, each stage has specific time frames within which the inmate must initiate administrative review.  An inmate's failure to comply with these time frames will result in the grievance being returned unanswered as untimely submitted.  Grievance Process, ¶ II©.

### 3.   Plaintiff's Efforts to Exhaust Administrative Remedies

Defendants, in raising the exhaustion defense, collectively address all of Plaintiff's grievance submissions, state they were returned for procedural defects, and that Plaintiff "failed to correct and resubmit any of these grievances."  See Defendants' Motion at 6.  In support, Defendants cite the grievance submissions and responses provided with the Special Report.  See Special Report, Attachments 2-4.  The Special Report includes the following four grievances: JCCC-09-21 dated April 7, 2009; JCCC-09-22 dated April 7, 2009, JCCC-

---

[3]Defendants have submitted the ODOC's Grievance Process in support of their Motion.  See Defendants' Motion, Exhibit 1.

11-06 dated January 19, 2011 and JCCC-11-29 dated April 7, 2011.  See id.

In addition, Defendants submit the Affidavit of Becky Guffy, Grievance Manager at

JCCC.  Ms. Guffy states:

> Plaintiff submitted grievance numbers JCCC-09-21, JCCC-09-22, JCCC-11-06
> and JCCC-11-29.  All grievances were processed in accordance with ODOC
> Policy.  They were returned unanswered due to procedural defects.  *Plaintiff
> was given the opportunity to correct the defects and re-submit as reflected on
> the cover letter attached to each one.  Plaintiff did not re-submit.  Plaintiff has
> not exhausted his administrative remedies.*

See Special Report, Attachment 13, Affidavit of Becky Guffy Administrative Programs

Officer I (Guffy Affidavit) (emphasis added).  Defendants further rely on the affidavit of

Mike Murray, employed by ODOC as a Nurse Manager in the Medical Services

Administrative Office.  See Special Report, Attachment 13, Affidavit of Mike Murray

("Murray Affidavit").  Mr. Murray states that he has reviewed the medical grievance log and

individual offender grievance files maintained by the Medical Services Administrative

Office.  See Murray Affidavit, ¶ 3.  He further states that based on that review, the medical

administrative review authority has not received from Plaintiff any grievance appeals or other

correspondence and, therefore, that Plaintiff has not exhausted administrative remedies as

to any medical issues.  See id.

As noted, Plaintiff has not responded to Defendants' Motion.[4]  Therefore, the Court

deems as undisputed the fact that the only grievances submitted by Plaintiff are the four

---

[4]The Court granted Plaintiff numerous extensions of time within which to file a response, but Plaintiff never submitted a response.  See Orders [Doc. ## 26, 31, 33 and 37].

identified in the Guffy Affidavit.  Of those four grievances, grievance No. JCCC-11-29

relates to a matter not at issue in this lawsuit.[5]  The Court, therefore, focuses its analysis on

the remaining three grievances.

### a.   Grievance No. JCCC-09-21 / Exhaustion of Claims Raised in Count I of the Complaint

The record shows that  on April 7, 2009, Plaintiff submitted a formal grievance, No.

JCCC-09-21.  In that grievance, Plaintiff described the nature of his complaint as follows:

> I was injured while in transport to this facility.  I attempted to submit a
> Request to Staff about the issue (as indicated in the Request to Staff attached)
> to the Transport Agency on 3-3-09 and received no response.  I submitted the
> attached RTS to J. Dowling D.W. 3-23-09 requesting help since I have
> received no response and was given the run around.

See Special Report, Attachment 2, Inmate/Offender Grievance Report Form, No. JCCC-09-

21.  As the action requested by the reviewing authority, Plaintiff stated: "I want those

responsible for my injuries to be held accountable.  To begin with by having their names &

titles provided to me."  See id.

On that same date, Becky Guffy, Warden's Assistant, returned unanswered Plaintiff's

grievance due to procedural defects.  Plaintiff was advised: (1) the RTS was submitted out

---

[5]Grievance No. JCCC-11-29 relates to a request for funds from Plaintiff's mandatory savings account for the payment of filing fees in *this* action.  See Special Report, Attachment 4. That grievance is unrelated to the claims raised in the Complaint and in particular the claims raised in Count III. In addition, Plaintiff initiated the grievance by filing a RTS on March 22, 2011, *after* he filed this action.  Because the grievance does not relate to claims raised in the Complaint and is temporally irrelevant as initiated after the commencement of this action, the Court need not consider it.

of time from the date of the incident;[6] (2) the grievance was submitted out of time from the date of incident or date of response to RTS;[7] and (3) Plaintiff's signature was not affixed to the grievance / RTS.  See Special Report, Attachment 2, Grievance Report.  Contrary to the statement in the Guffy Affidavit submitted with the Special Report, Plaintiff was specifically advised: "Offender is out of time on this issue.  *Do not resubmit*."  See id. (emphasis added).

The Grievance Process instructs as follows regarding a grievance being returned unanswered for procedural defects:

> If the offender does not follow instructions as explained in this procedure and on the grievance forms, the grievance may be returned unanswered for proper completion.  *If allowed*, the offender must properly re-submit the grievance within ten calendar days of receipt. . . .

See id., ¶ V(A)(7).  Here, the record shows Plaintiff was *not* allowed to resubmit.  The record further shows, however, that prison officials acted within their authority in returning the grievance unanswered.  The Grievance Process provides that a grievance will be returned unanswered as untimely if the inmate does not submit the grievance (or RTS) within the time

---

[6]Ms. Guffy took notice of the date of the incident from a separate grievance filed by Plaintiff – Grievance No. JCCC-09-22 – in which he identified the incident date as February 26, 2009.

[7]Within the section of the Grievance Process headed Submission and Review of Formal Grievance, the following instructions are provided about submitting the grievance:

> The offender grievance must be submitted by the complaining offender within 15 calendar days of the incident, or the date of the response to the 'Request to Staff' form, whichever is later.  *The 'Request to Staff' must have been timely submitted as outlined in Section IV.B. item 2. of this procedure*.

Grievance Process, ¶ V(A)(1) (emphasis added).  Thus, pursuant to the terms of the Grievance Process, where the RTS is untimely, the grievance will be deemed untimely as well.

frames provided.  See Grievance Process ¶ II(C).  The untimeliness of the RTS was cited

twice as reason to return the grievance.  Because the RTS was untimely, Plaintiff was not

allowed to resubmit the grievance.

Further, the record supports the finding by prison officials that the grievance was

untimely.  Plaintiff alleges Defendants engaged in conduct rising to deliberate indifference

to his health and safety on February 26, 2009.  See Complaint at electronic pages 2, 4.  See

also Special Report, Attachment 5,  Incident Report.  The Grievance Process requires the

RTS to be submitted "within seven calendar days of the incident."  See Grievance Process,

¶ IV(B)(2).  Plaintiff had, therefore, until March 5, 2009, to submit a RTS on his claims

related to the February 26, 2009 incident.

The first RTS in the record is dated March 23, 2009, and submitted to J. Dowling,

Deputy Warden.  See Special Report, Attachment 2.  As the subject of the RTS Plaintiff

stated:

> During trasport [sic] to this facility I was injured as a direct result of the
> transport officers negligence in following proper procedure.  I submitted a
> Request to Staff about the subject shortly after arriving and I have yet to
> receive a response from the transport agency.  I am wanting to address them
> properly however I know nothing of who to address this issue to.

See id.  As the "action requested" Plaintiff stated: "I am requesting a list of those people that

I should properly address my issues to, in order to solve the problems I have.  Please provide

me with their names and buisness [sic] / mailing address."  Id.

On April 3, 2009, Dowling advised Plaintiff of the seven-day time period within

which to submit a RTS, noted that his RTS did not provide an "incident date" and further

advised Plaintiff that the Grievance Process addresses how to proceed where an inmate has not received a response to a RTS within 30 days of its submission.  See id.[8]

Plaintiff did not follow the steps required in the Grievance Process for obtaining a response to his previously submitted, but unanswered RTS.  Instead, as set forth above he proceeded to file a grievance on the March 23, 2009 RTS – formal grievance, No. JCCC-09-21.

Because grievance No. JCCC-09-21 was returned unanswered due to procedural defects, including untimeliness, Plaintiff has not properly exhausted administrative remedies. Plaintiff submitted the March 23, 2009 RTS more than seven calendar days from the incident date.

On the record presented, Defendants are entitled to summary judgment as to the claims raised in Count I of the Complaint due to Plaintiff's failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

**b.      Grievance Nos. JCCC-09-22 and JCCC-11-06 / Exhaustion of Claims Raised in Count II of the Complaint**

In Count II, Plaintiff claims Defendants Jane Doe Nurse, Frech and Troutt have acted

_____

[8]As to the latter, the Grievance Process provides the following direction as to what steps an inmate must take if no response to a RTS is received:

> If there has been no response in 30 calendar days of submission, the offender may file a grievance to the reviewing authority with evidence of submitting the "Request to Staff" to the proper staff member.  The grievance may assert only the issue of the lack of response to the Request to Staff.

See Grievance Process, ¶ IV(B)(7).

with deliberate indifference to his serious medical needs from the date of his injury, February 26, 2009, and continuing up to the filing of this action. See Complaint at electronic page 4. The record includes evidence of two attempts by Plaintiff to exhaust administrative remedies as to the claims raised in Count II of the Complaint.

On March 31, 2009, Plaintiff submitted a RTS to the Medical Supervisor, Defendant Frech, on issues related to his medical care. See Special Report, Attachment 2. He acknowledged a medical appointment scheduled for the next week,[9] but complained of current and constant pain due to the fact that his prescription for pain medication had "expired." He also complained that due to pain, he was unable to wait in the food line and, therefore, unable to eat. Plaintiff requested a renewal of his pain medications and permission to enter the "side door" to eat. Plaintiff received a response to the RTS on April 2, 2009, advising him to purchase ibuprofen from the canteen until his appointment and to sit and wait until the line diminished before getting his food. See id.

Plaintiff then filed a grievance on April 7, 2009. See Special Report, Attachment 2, Grievance No. JCCC 09-22. In the grievance, he noted the injury he sustained on February 25, 2009, and stated that since that time, he had been in constant pain and denied proper medical care.[10] As relief, he requested to be "taken to a facility where I can receive proper

---

[9]Plaintiff stated he was scheduled for an appointment on April 8, 2009. See Special Report, Attachment 2, RTS dated March 21, 2009.

[10]In the grievance, Plaintiff actually references the day immediately following the fall, February 26, 2009, on which he was taken to the hospital to be examined for injuries sustained from the fall. Whether the "incident date" is construed as February 25, 2009, or February 26, 2009, is not dispositive.

14

medical treatment." See id.  Plaintiff's grievance was returned unanswered on various procedural grounds including untimeliness and the fact that Plaintiff sought different relief in the grievance than he had in the RTS.  See Special Report, Attachment 2. Due to these procedural defects, Plaintiff was further notified that he was not to resubmit the grievance. Again, the instruction *not* to resubmit is contrary to the statement contained in the Guffy Affidavit.

On the one hand, prison officials acted within their authority in rejecting Grievance No. JCCC-09-22 on grounds Plaintiff attempted to raise a different issue in the grievance than he had raised in the RTS. The Grievance Process allows an inmate to grieve only one issue in the RTS and grievance.  See Grievance Process, ¶ IV(B)(2) ("The 'Request to Staff' must be submitted within seven calendar days of the incident, and only one issue or incident is allowed per form."); and ¶ V(A)(4) ("Only one issue or incident is allowed per grievance.").  In addition, a RTS must precede the submission of a grievance.  In the RTS, Plaintiff sought one form of relief – renewal of a prescription for pain medications and special assistance for the food line.  But in the grievance, Plaintiff sought different relief – medical treatment at a different facility.

A question remains, however, as to whether the prison officials' directive to Plaintiff -- "do not resubmit" the grievance -- rendered administrative remedies unavailable. The Grievance Process provides the following with respect to a grievance that has not been properly submitted: "If the offender does not follow instructions as explained in this procedure and on the grievance forms, the grievance may be returned unanswered for proper

15

completion.  *If allowed*, the offender must properly re-submit the grievance within ten calendar days of receipt."  Id., ¶ V(A)(7) (emphasis added).   But here, Plaintiff was *not* allowed to resubmit the grievance.  Although prison officials cited untimeliness as a basis for returning the grievance, they did so based on an incorrect date. Prison officials utilized February 26, 2009, as the incident date for purposes of deeming the grievance untimely and directing Plaintiff not to resubmit the grievance.  However, Plaintiff was complaining about the denial of ongoing medical treatment – a continuing violation.   It appears, therefore, that prison officials may have rendered administrative remedies unavailable by not allowing Plaintiff the opportunity to resubmit the grievance.  See Little, 607 F.3d at 1250 (prison officials exceeded authority in returning unanswered grievance appeal where procedures did not allow for return on basis cited; therefore, prisoner did not have an available administrative remedy).

Nonetheless, in Count II of the Complaint, Plaintiff complains of ongoing delay and denial of medical care and the record shows Plaintiff later pursued additional administrative remedies after the return of Grievance No. JCCC-09-22.

On January 12, 2011, Plaintiff submitted Grievance No. JCCC-11-06.  See Special Report, Attachment 3.  Plaintiff complained he had not received a response to a RTS that he submitted on December 8, 2010.  As relief, Plaintiff requested that a response be provided.

Plaintiff attached the December 8, 2010 RTS to the grievance as required by the Grievance Process.  As the subject of the RTS Plaintiff complained of deliberate indifference to his medical needs from the date of his injury, February 25, 2009, through the date of the

16

RTS, December 8, 2010.  As the action requested, Plaintiff wanted to be provided an MRI, a diagnosis and effective treatment.  See id.

This grievance was returned unanswered.  Plaintiff was told that he was out of time to request a response: "Offender indicated a RTS on this subject was submitted 9-19-10 and was not answered.  Offender had 15 days past 10-19-10 to submit a grievance regarding the non-response. (11-3-10).  Offender is out of time on this issue."  See id.

Prison officials erroneously utilized September 19, 2010, as the triggering date.  That date appears in the December 8, 2010 RTS where Plaintiff responded affirmatively to the form question asking whether he had previously submitted a RTS on the same subject.  Plaintiff indicated he submitted a previous RTS on September 19, 2010.  See Special Report, Attachment 3.

As previously set forth, the Grievance Process provides that where an inmate does not receive a response to a RTS within 30 calendar days of its submission, the next step is to file a grievance asserting only the issue of a lack of response.  Plaintiff followed this procedure.  He was not challenging prison officials' failure to respond to the September 19, 2010 RTS.  Instead, he was challenging prison officials' failure to respond to the December 8, 2010 RTS.  He was timely in doing so and prison officials improperly cited him for a procedural defect in returning the grievance unanswered.  See Little, 607 F.3d at 1250.

Nonetheless, when Grievance No. JCCC-11-06 was returned unanswered, it appears Plaintiff had ten days within which to resubmit the grievance.   Unlike the other grievances cited, here Plaintiff was not instructed "do not re-submit."   But, whether he could have

17

resubmitted this grievance is unclear from the record.

Even so, there is no evidence in the record that Plaintiff took any additional steps to grieve his medical issues – issues which by Plaintiff's allegations continued to be ongoing. As reflected in the Murray Affidavit, Plaintiff never submitted any grievance appeals to the medical administrative review authority.   On the record presented, therefore, it appears Plaintiff's medical care claims raised in Count II of the Complaint are not exhausted.   But because prison officials' conduct may have rendered those remedies unavailable, the Court has addressed, alternatively, the merits of the claims raised in Count II.  See discussion, *infra*.

### c.   Failure to Submit Grievance / Claims Raised in Count III of the Complaint

In Count III of the Complaint, Plaintiff alleges Defendants' retaliatory conduct has violated his constitutional rights.  Plaintiff alleges as a result of the retaliatory conduct, he could not exhaust administrative remedies as to the claims raised in his prior civil rights action.  See supra, footnote 1.  He further alleges he could not obtain funds from his prison savings account to pay filing fees in the prior action and, as a result, was forced to dismiss that action.

As additional retaliation, Plaintiff alleges that after the dismissal of his prior action, Defendants Frech and Troutt deprived him of all pain medications for a period of one week from February 12, 2011 through February 19, 2011.

The record contains no evidence of exhaustion of administrative remedies as to the acts of retaliation which form the basis of the claims raised in Count III of the Complaint.

Because Plaintiff has failed to pursue administrative remedies as to these claims, they are unexhausted and Defendants are entitled to the entry of judgment as a matter of law in their favor.

In sum, viewing the evidence in the light most favorable to Plaintiff as the non-moving party, the record shows that no genuine issue of material facts exists on the issue of exhaustion of administrative remedies. Plaintiff has not completed the steps required by the ODOC's Grievance Process to exhaust administrative remedies as to the claims raised in this action. In addition, the record does not demonstrate prison officials thwarted Plaintiff's efforts to comply with the Grievance Process.[11] Accordingly, Defendants are entitled to summary judgment in their favor pursuant to 42 U.S.C. § 1997e(a) on grounds Plaintiff has failed to exhaust administrative remedies.

## C.    Deliberate Indifference to Plaintiff's Medical Needs – Count II

Even if prison officials acted outside the authority of the Grievance Process in returning grievances unanswered to Plaintiff as to the claims raised in Count II of the Complaint – and thereby rendered administrative remedies unavailable – summary judgment

---

[11]In the Complaint, Plaintiff alleges in conclusory fashion that prison officials at JCCC thwarted his efforts to exhaust administrative remedies. See Complaint at electronic page 13. He also alleges his "literary and serious physical injuries" prevented him from obtaining access to prison law clerks so as to pursue administrative remedies. See id. But Plaintiff's wholly conclusory allegations are insufficient and the Court's own review of the record shows that prison officials did not thwart Plaintiff's efforts. Further, as discussed herein, even if administrative remedies were unavailable to Plaintiff as to the claims raised in Count II of the Complaint, summary judgment in favor of the Defendants should be granted as the undisputed material facts show Plaintiff's Eighth Amendment rights have not been violated.

in favor of the Defendants should be granted.  The undisputed material facts show Plaintiff's Eighth Amendment rights have not been violated.

The Eighth Amendment creates an obligation on the part of prison officials to provide inmates with a "level of medical care which is reasonably designed to meet the routine and emergency health care needs of inmates."  Ramos v. Lamm, 639 F.2d 559, 574 (10th Cir. 1980).  See also Estelle v. Gamble, 429 U.S. 97, 103 (1976). The fact that a state must provide medical treatment does not mean, however, that mere negligence in diagnosing or treating an inmate's medical condition gives rise to a valid constitutional claim under the Eighth Amendment.  Estelle, 429 U.S. at 106.  Rather, to establish an Eighth Amendment violation, the prisoner must satisfy two requirements consisting of an objective and a subjective component.  See Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).  To satisfy the objective component, an inmate must allege facts to demonstrate that the deprivation at issue (here, the alleged delay and denial of treatment for Plaintiff's injuries arising out of the fall on February 25, 2009) was sufficiently serious.  Id.  A delay in medical care is sufficiently serious only if the prisoner can show the delay resulted in substantial harm.  Id.  "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain."  Id. (citation and internal quotations omitted).

The subjective component requires the prisoner to present evidence that prison officials acted with a sufficiently culpable state of mind.  See Mata, 427 F.3d at 751(citing Estelle, 429 U.S. at 106).  The required state of mind is one of deliberate indifference.  Id. The subjective component is not satisfied unless a prison official knows of an excessive risk

to a prisoner's health and safety and disregards that risk.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u>  Moreover, "[i]f an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability under this standard."  <u>DeSpain v. Uphoff</u>, 264 F.3d 965, 975 (10th Cir. 2001).

In addition, disagreements with the treatment provided by prison medical staff do not in themselves rise to the level of deliberate indifference necessary to show a violation of the Eighth Amendment.  <u>See</u> <u>Perkins v. Kansas Dept. of Corrections</u>, 165 F.3d 803, 811 (10th Cir. 1999).  Therefore, while a plaintiff may not like or agree with the treatment decisions made by prison staff, mere disagreement with the medical care provided is insufficient to state a cognizable constitutional claim for relief under § 1983.

The Court assumes, without deciding, that the alleged medical problems experienced by Plaintiff after his fall on February 25, 2009, were sufficiently serious to satisfy the objective component of an Eighth Amendment claim.  But because Plaintiff cannot satisfy the subjective component of his Eighth Amendment claim, Defendants are entitled to judgment as a matter of law in their favor as to Plaintiff's claims.

The record shows that immediately after the fall on February 25, 2009, Plaintiff was examined and treated at William S. Key Correctional Center.  <u>See</u> Special Report, Attachment 5, Incident Report.  The day after his fall, Plaintiff was taken to the emergency room and examined.  X-rays taken of Plaintiff's right shoulder, hip, both knees and

lumbrosacral spine showed no fractures or other apparent distress.  See id., Attachment 6, Emergency Department medical records.

From the time of his arrival at JCCC, immediately after the fall on February 25, 2009, Plaintiff has and continues to receive regular and ongoing treatment for a range of medical issues.  Specifically as related to the alleged injuries Plaintiff sustained arising from the fall on February 25, 2009, medical records from JCCC show that Plaintiff's care has been extensive and includes additional x-rays, an MRI, prescription medications for pain, multiple exams, and medical consults with a neurologist.  See Special Report, Attachment 7 (Plaintiff's medical treatment records from JCCC including Plaintiff's requests for medical services and outside consults) and Attachment 8 (consultation by neurologist Dr. Joshua Kershen).  There is no evidence in the record that Plaintiff's medical treatment has been delayed or denied due to the deliberate indifference of any Defendant.  See id.  See also Special Report Attachment 10, Affidavits of Dr. Jeff Troutt and Katryna Frech.

To the contrary, the record evidence shows that Plaintiff has and continues to receive proper medical care at JCCC.  See id., Affidavit of Dr. Bruce Meyer.  Indeed, after outside consult with a neurologist, the medical evidence suggests Plaintiff's pain and related symptoms may be due to a psychiatric problem.  See Special Report, Attachment 8, (correspondence from neurologist, Dr. Joshua Kershen, dated January 28, 2011).  Plaintiff has been evaluated by a psychologist for possible mental health issues, but has declined mental health services.  See Special Report, Attachment 9.

Plaintiff has not responded to Defendants' Motion and, therefore, has not refuted the

evidence contained in the Special Report regarding his medical care.  His allegations in the Complaint – which are largely based on conclusory statements unsupported by specific facts – are insufficient to establish Defendants' conduct rises to the level of an Eighth Amendment violation.  Accordingly, Defendants are entitled to summary judgment in their favor as to the claims raised in Count II of the Complaint.[12]

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Plaintiff's claims against ODOC and all Defendants sued in their official capacities be DISMISSED based on Eleventh Amendment immunity and that as to all other claims brought by Plaintiff that Defendants' Motion for Summary Judgment (Doc. # 21) be GRANTED and that judgment issue in favor of Defendants and against the Plaintiff .  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by   June 20th, 2012, in accordance with 28 U.S.C. § 636 and Fed.R.Civ.P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir.1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned

---

[12]Based on the recommendations set forth, the Court declines to address the additional bases upon which the Defendants seek dismissal and/or summary judgment.

Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___31st___ day of ____May___, 2012.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE